cumstances that it was held that the surplus income should be paid to the presumptive owner of the next eventual estate. So, also, in St. John v. Andrews Institute, 191 N. Y. 279, 83 N. E. 981, 14 Ann. Cas. 708, the testator set apart a fund for the benefit of a charitable corporation to be created after his death. There was some delay in the incorporation of the charity, and the question considered was as to the disposition of income which accrued between the death of the testator and incorporation of the charity. That clearly was undisposed of, and was held to belong to the presumptive owner of the next eventual estate. No such case is presented here. By the will the widow was given the whole income, and she is entitled to receive all of it which the testator did not validly provide should be otherwise disposed of. The codicil was valid as to capital, and invalid and wholly inoperative as to income, and the disposition of so much of the stock dividends as represent income was not affected thereby.

The decree appealed from must be affirmed, with costs. All concur.

---

### MURPHY v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Equity Term, Steuben County. December 3, 1915.)

1. DEATH ⬅➡2—PRESUMPTIONS.
    The presumption of death does not arise because of absence until after the lapse of seven years from the time of disappearance.
    [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. ⬅➡2.]

2. INSURANCE ⬅➡365—FORFEITURE OF POLICY—REINSTATEMENT.
    Where holder of life insurance policy disappeared and an administrator was appointed, and for a year or two paid premiums on the policy, and then ceased to do so, and after five years sued to have the policy restored, such relief cannot be granted, where payment of premium was a condition for keeping the policy in force, though plaintiff advisedly refused to pay the premium, because inconsistent with his theory that the insured was dead.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 932, 933; Dec. Dig. ⬅➡365.]

Suit by James W. Murphy, as administrator of Charles Houncker and of Kate M. Houncker, both deceased, against the Metropolitan Life Insurance Company, to obtain the reinstatement of a lapsed life insurance policy. Complaint dismissed.

James O. Sebring, of Corning, for plaintiff.
Frank J. Saxton, of Corning, for defendant.

CLARK, J. Charles Houncker, for many years a resident of the city of Corning, disappeared from his home on the 9th day of February, 1911, and has never returned. Nothing has been heard from him since that time, except that it was claimed on the trial of a former action between the same parties that after Mr. Houncker disappeared he had been seen in Texas; but that rumor was carefully traced, and was shown to be without merit. At the time Mr. Houncker disap-

peared he held a life insurance policy in the defendant company, which had been carried for some years, and which was then in full force. A premium fell due on the 30th day of December, 1911, which was paid either by this plaintiff or some representative of Mr. Houncker.

At the time of his disappearance said Houncker left a wife, Kate M. Houncker, who died about a month later, and this plaintiff was subsequently appointed administrator of the estate of said Charles Houncker, and also administrator of the estate of his wife, Kate M. Houncker, and he brings this action in his representative capacity for both estates, seeking to have the lapsed policy restored. The payment of the premium of December 30, 1911, on the life insurance policy above referred to was made after taking advice of counsel. On December 30, 1912, another premium fell due, and plaintiff had due notice when said payment was due, and due and proper notice was also mailed to the assured at his last known place of residence. Plaintiff did not pay the premium due December 30, 1912, and refused to pay the same, and it remained unpaid until the 17th of February, 1913, when the policy lapsed for failure to pay the premium, and plaintiff now seeks to have the policy restored, and asks the court to exercise its equitable powers to restore it.

[1] There is no evidence in this case of Mr. Houncker's death, except any inferences that might be drawn from his long absence, and under these circumstances there would be no presumption of his death until after the lapse of seven years from the time of his disappearance. Matter of Davenport, 37 Misc. Rep. 455, 75 N. Y. Supp. 934; Eagle v. Emmet, 4 Bradf. Sur. 117; Matter of Sullivan, 51 Hun, 379, 4 N. Y. Supp. 59. The rule with reference to the presumption of a person's death because of long absence may be stated as follows:

"The presumption of law is always in favor of the continuance of life, but this presumption is overcome by the presumption of death that arises in the case of a person who has been absent and unheard of for seven years. This latter presumption does not, however, arise until the full period has elapsed, and when it does arise there is no reason why it should have a retroactive effect, so as to defeat the other presumption which was in full force during the waiting period." 13 Cyc. 304.

It will thus be seen that seven years must elapse before the presumption can be indulged that Charles Houncker is dead, and that presumption would not arise until February 9, 1918. In the meantime there is a presumption that he is living. In order to keep the insurance policy in question in force, it was necessary, according to its terms, that the annual premiums be paid as therein stated, and if for any reason the premiums were not paid, the policy by the terms of the contract became void. After the disappearance of Mr. Houncker, and after the death of his wife, the premium due December 30, 1911, had been paid; but when the premium of December 30, 1912, became due, although the plaintiff had received the required notice of the due date, he refrained from paying the premium, which he had a right to pay, and thus voluntarily took the position from which he now asks the court to relieve him.

[2] While the presumption existed that Mr. Houncker was living (and that presumption still exists), if his representative desired to keep

the policy in force, it was his duty to pay the annual premiums; and he having failed to do so through no mistake of fact, and through no fraud or misapprehension or lack of notice entering into the case, the position he occupies with reference to the enforcement of this policy is one entirely of his own choosing, and the court cannot exercise its equitable powers and restore the policy, unless plaintiff has shown some good and sufficient reason for failing to pay the premium when due. The court, exercising its equitable powers, should of course relieve from all penalties and forfeitures for nonpayment of moneys due on a certain date, provided it can be done and at the same time be doing justice to the other party; but the court has no right to exercise such powers when the party seeking to be relieved voluntarily, and with his eyes open, placed himself in the position from which he seeks to be relieved, when the granting of such relief would injure the other party to the contract.

By the terms of the policy, if the annual premiums were not paid after due and proper notices had been given as to when the payments were due, the policy became void. In this case the premium of December 30, 1912, was not paid, and never has been paid, the policy by its terms has lapsed, and the court cannot restore it without doing an absolute injustice to defendant, which is standing upon its contract rights. The payment of the insurance premium was a condition which the assured was obliged to faithfully keep and perform in order to keep the policy in life. Plaintiff had paid the premium of December 30, 1911, and he had a perfect right to and could have paid the premium due December 30, 1912. He was not deceived or defrauded in any way by any act of the defendant or its representatives, but he knowingly and advisedly neglected and refused to pay that premium, because, as he claimed, it would be inconsistent with his theory that Mr. Houncker was dead, and under these circumstances a court of equity should not grant the relief asked for. Wheeler v. Conn. Mutual Life Ins. Co., 82 N. Y. 543, 37 Am. Rep. 594; 25 Cyc. 824–844; 9 Cyc. 631.

Judgment is therefore directed in favor of the defendant, dismissing the complaint, with costs.