JAMES T. HALLINAN, as Executor, etc., of LOUISA C. Fox, Deceased, Respondent, *v.* HARRY REDMOND SKILLEN and Another, Appellants, Impleaded with ROBERT LE ROY ROBINSON and Others, Defendants.

First Department, November 1, 1929.

*Jonas J. Hegt* of counsel [*William Matthews*, attorney], for the appellants.

*James T. Hallinan* of counsel [*Samuel S. Tripp* with him on the brief; *Theodore J. Groh*, attorney], for the respondent.

Judgment affirmed, with costs, on the opinion of VALENTE, J., at Special Term.

Present — DOWLING, P. J., MERRELL, FINCH, McAVOY and PROSKAUER, JJ.

The following is the opinion of the court below:

VALENTE, J.: This action is brought by the executor of Louisa C. Fox to construe the will of her father, Moses Redmond. Upon such construction depends the title to certain real property in the city of New York known as No. 362 West Thirty-fifth street. Under the 4th paragraph of the Redmond will the testator left his entire residuary estate, including the realty mentioned, to his wife, Eliza, "for her sole use and benefit during her life, with full right and power to sell, transfer and convey or mortgage the whole or any

part thereof in her discretion * * * and use the whole or any part of said estate, principal or interest, or the proceeds, for her own use and benefit in any manner she may deem proper. The intention hereof being that she shall at all times use and enjoy the whole or any part of my said property or estate the same as if this devise and bequest was absolute." By the 5th paragraph he devised and bequeathed " so much of said estate and property as may or shall remain to my said daughter [Louisa C. Fox], and my said granddaughter, Jennie Fox, share and share alike, for their and each of their use, benefit and behoof forever; but it is my will and I direct in case either of said last named beneficiaries Louisa or Jennie shall have departed this life prior to the decease of my said wife, that then the survivor shall take the whole of said estate remaining." The 6th paragraph then provides . that if Louisa remarried " the devise to her is hereby revoked, and the share intended for her is hereby given to my said granddaughter, Jennie Fox." The testator next directed in the 7th paragraph: " In the event that both said Louisa and Jennie shall die without issue, then so much of said property or estate as may not have been used and disposed of by them or either of them, I will and direct shall go to and belong to my said wife's nephews, Henry R. Skillin and George Skillin * * * or the survivor of them, forever, share and share alike." The testator left surviving him his widow, his daughter, Louisa, and the latter's daughter, Jennie, all of whom are mentioned in the will. The granddaughter died in 1912 during the lifetime of the widow, without leaving issue. Eliza Redmond died intestate in 1915, leaving her surviving her daughter, Louisa, who also died without issue. But she left a will disposing of all her property. The point is now urged by the defendants Skillen that a situation has arisen contemplated as a possibility under the 7th clause of the will, whereby both Louisa and Jennie, having died without issue, they are entitled to inherit. The plaintiff, however, claims that the Skillens were to take only in the event that both Louisa and Jennie died without issue during the lifetime of the widow, the intention of the testator being, it is said, to provide for a succession in such case. As Louisa, however, became vested with title after the death of her mother, it is argued that the contingency contemplated by the will never arose. In attempting to arrive at a solution of the question we must determine the intention of the testator, if it is reasonably clear, regardless of any general canons which have been formulated for the construction of wills. (*Cammann* v. *Bailey*, 210 N. Y. 19; *Sedlaczek* v. *de Dreuzy*, 220 App. Div. 446.) As Chief Judge Hiscock has so well said, in *Brown* v. *Gardner* (233 N. Y. 261, 264), referring to

the limitations of general canons of construction: " The decisions covering this question are too numerous to be reviewed, and even if they were reviewed we should not be able to reconcile them all or avoid the conclusion that rules, and exceptions to and refinements of rules, have at times been adopted *on the theory of carrying out the intention of a testator which undoubtedly have given him credit for intentions which he never entertained.*" (Italics mine.) The plaintiff urges that the 5th clause gave to Louisa C. Fox and Jennie Fox an unconditional estate in fee simple in so much of the property as remained at the expiration of the life estate of Eliza Redmond; that the provisions in paragraph 7 are ambiguous, inconsistent and repugnant to such an absolute estate, and cannot limit it; and by reason of their uncertainty must be deemed void, and that the devise over to the Skillens is merely substitutional in the event that both Louisa and Jennie should die without issue *during the lifetime of the life tenant.* If this argument is correct, plaintiff must prevail. Let us, therefore, study the intent of the testator, and see whether it is clear enough to dispense with the necessity of dogmatically applying general principles of interpretation. The 4th paragraph gives the entire residue to the widow practically in fee, with power to use and dispose of the property as she sees fit. Whether this included the power to devise it by will, we need not consider, because she died intestate. Jennie Fox having predeceased her grandmother, Louisa thus became entitled to the entire unused residue devised under the will of the testator. It may be said in this connection that if we followed the rule in *Van Horne* v. *Campbell* (100 N. Y. 287), we should be constrained to hold that as the estate of Louisa could only depend upon the contingency of the non-execution of the absolute power of disposition vested in her mother, it was void. If this were the law we should have to hold that the daughter succeeded to the estate of her mother under the Statute of Descent. In that event it would be needless to consider the possible interests of the Skillens, because of the invalidity of the provisions in the will limiting the absolute estate of Eliza Redmond. But that case is no longer the law. It has been changed by the Revised Statutes, now embodied in section 57 of the Real Property Law, which provides that an expectant estate, like that of Louisa, liable to be defeated, shall not, on that ground, be adjudged void in its creation. (*Greyston* v. *Clark*, 41 Hun, 125; *Tillman* v. *Ogren*, 227 N. Y. 495.) But is the interest of Louisa Fox nevertheless to be construed as one in fee simple? Reading the 5th clause, this is undoubtedly the conclusion. But there is the 7th clause in the will which must be given a meaning. Plaintiff says that the absolute estate granted by the 5th paragraph

cannot be limited by a clause which is not equally clear in intent. (*Goodwin* v. *Coddington*, 154 N. Y. 283; *Clarke* v. *Leupp*, 88 id. 228.) This is undoubtedly the general rule, and the reason for it is well expressed in *Tillman* v. *Ogren* (*supra*), where it is said (at p. 504) that " *an absolute estate* is repugnant as a matter of fact to a gift over to a third person. It is because of such repugnance in fact that an apparently absolute estate cannot be cut down or qualified unless the intention is clear and definite." An examination of the 7th paragraph shows that the testator contemplated the possibility that both Louisa and Jennie might die without issue, and he intended to provide for the succession in that event. Did he provide for such a contingency in clear and definite language? If he did, has the situation arisen where the Skillens are entitled to inherit? As to the first question, certain apparent inconsistencies are pointed out by plaintiff. Thus attention is called to a contingency in the clause that *both* Louisa and Jennie might die without issue, it being shown that if Jennie died without issue Louisa would necessarily have none, because by the 6th clause she was prohibited from marrying. I see no inconsistency here, nor is it necessary to explain this as a mere inadvertence. The probable intention was not to prohibit Louisa's marriage absolutely, the testator's view being that if she married again she could rely upon her husband for means of sustenance, and the devise to her should go to Jennie. On the other hand, if she married after Eliza's death, the prohibition would become abortive, because with the power of absolute disposal she could sell the property and marry afterward. Her issue by a possible second marriage, occurring after she became vested, was not subject to any disqualification by reason of her marriage. Nor is there any uncertainty as to whether the succession to the Skillens was conditioned upon the death of Louisa and Jennie without issue during the lifetime of the widow or at any other time. The clause giving to the Skillens " so much of said property or estate as may not have been used and disposed of by them or either of them " contemplates a period when they might become vested with title to the property; otherwise the testator would not speak of the possibility of their disposing of it or any part of it, and they could not possibly obtain the power to dispose until after the death of the widow. Finally, there is no merit in the contention that the clause constitutes a violation of the Statute against Perpetuities, because at no time, even during the lifetime of Eliza, was the power of alienation suspended. The 7th clause is, therefore, a valid and certain limitation upon the 4th, and the question remains whether the situation has arisen, within the

contemplation of the testator, where the Skillens are entitled to succeed. Concededly, both Louisa and Jennie have died without issue, and Louisa has not disposed of the property in question during her lifetime, as she undoubtedly had a right tó do by the implication arising from the reference in the clause to " so much of said property or estate as may not have been used and disposed of *by them or either of them.*" If Louisa had died intestate, I would hold that the property should go to the Skillens by virtue of the 7th clause. But she disposed of all her property by will, and it remains to be seen whether her power to dispose was limited to the right to alien during her lifetime. In *Matter of Gardner* (140 N. Y. 122) Judge MAYNARD said: " A general power to dispose of property includes the right to dispose of it by will, unless the grant of the power contains words which expressly or by fair implication exclude such a method of disposition. The will took effect at the very moment of death, and there was not, therefore, any part of the property which was not disposed of ' at her decease.' " It would thus seem that no property being left undisposed of at the death of Louisa, the Skillens take nothing, and the plaintiff is entitled to the property. Nor is this conclusion unsupported by internal evidence obtained from consideration of the entire will. Since Louisa obtained the property with the absolute power of disposition, was it the testator's intention to limit this power and to circumscribe her wishes by restricting her right to dispose of it by will? I think not. Only if she had chosen not to exercise her will did the testator presume to speak for her. I, therefore, hold that the property in question was validly disposed of under the will of Louisa Fox and that the defendants Skillen are entitled to no part of it. Submit findings and judgment accordingly.