WOODSIDE PRESBYTERIAN CHURCH, Respondent, *v.* I. TOWNSEND BURDEN, Appellant, Impleaded with EVELYN BURDEN, Defendant.*

Third Department, January 23, 1934.

*Joseph C. Behan, Jr.* [*John T. Norton* of counsel], for the appellant.

*James Farrell,* for the respondent.

CRAPSER, J.   On May 28, 1910, Margaret E. Proudfit wrote to I. Townsend Burden and Evelyn Burden a letter which referred to the codicil of a previous will drawn approximately three years before the execution of her last will and testament.

" My dear Nephew and Niece: It is my express desire and purpose in giving to you Twenty Five Thousand Dollars by the codicil to my will, although I do not make it a trust and condition, that you should with it create a trust of that amount with the Knickerbocker Trust Company, or if for any reason that shall be impracticable, then with some other solvent and appropriate corporation, by which such company or corporation shall take and hold the same in trust, to invest the same and keep the same invested, and to collect and receive the rents, income and profits thereof and to pay and apply the same to keeping the buildings of the ' South Presbyterian Church of Troy,' commonly known as the ' Woodside Presbyterian Church,' and the grounds about the same and used in connection therewith, in good order and repair, so far as the money so applicable thereto will permit; but no part thereof to be applied to any alteration or enlargement thereof; payment to the persons named in my will as executors, and to the survivor of them, and after the decease of both of them, to the Treasurer of said Church, to be and to be held to be a sufficient application of such rents, income and profits to the purposes of this trust, and a receipt by them with a statement that the said moneys have been or are to

be applied for such purposes shall be conclusive evidence thereof, and of a full discharge of the trustee for the moneys so paid."

On September 14, 1915, Margaret E. Proudfit died leaving a last will and testament which was duly admitted to probate and by the first clause it was provided as follows: " I give and bequeath to my nephew, I. Townsend Burden, Junior, and to my niece, Evelyn Burden, children of my brother, I. Townsend Burden, or to the survivor of them, the sum of Twenty Five Thousand Dollars."

Upon the judicial settlement of the will of Margaret E. Proudfit a legacy of $25,000 was paid to I. Townsend Burden and Evelyn Burden and on October 2, 1916, I. Townsend Burden wrote the following letter to the pastor of the plaintiff:

" Dear Sirs: As you probably know, my beloved Aunt, Mrs. Margaret E. Proudfit, in a letter written to me and found with her will, requested that I set aside the sum of $25,000, the income of which should be applied for the benefit of the Woodside Presbyterian Church.

" In accordance with her wishes I have invested this amount so as to yield for the benefit of the Church $4\frac{1}{2}\%$ annually, which amounts, as you will see to the sum of $1,125. I will arrange to send you this money in quarterly installments, beginning the 11th of October, 1916, which is just three months time from the day when the estate was distributed. This quarterly payment will amount to the sum of $281.25.

" My aunt, as you know, always had a deep and enduring interest in the welfare of the Church which was founded and built by her Father, and it is a great pleasure for me to be able to administer the income of this generous donation for its welfare."

On October 11, 1916, I. Townsend Burden sent a check for $281.25 to the trustees of the church with a letter which in part said: " In payment of the first quarter's interest on the *trust fund* authorized by Mrs. Proudfit." Payments of like amount were sent quarterly by I. Townsend Burden to the trustees of the church until January, 1931, when the defendant stopped paying.

He paid the interest on the $25,000 at four and one-half per cent to the church from October, 1916, until the semi-annual payment due in July, 1931.

On November 29, 1916, the secretary of the board of trustees of the church wrote a letter to the defendant I. Townsend Burden requesting a copy of the letter which had been written by Mrs. Proudfit in regard to the $25,000 and asking whether the income from the fund was to be for a limited period only or whether it was to be continuous.

In response to this inquiry the defendant wrote a letter to the

secretary of the church inclosing a copy of Mrs. Proudfit's letter. In this letter he said, among other things: " My sister and I have decided to carry out my aunt's wishes as expressed in her letter. The income, therefore, from this sum will be a permanent matter, and will be sent to you quarterly as I stated in my former letter to your Honorable Board. However, you will note that this money is to be used to maintain the grounds and church buildings in good condition, and for no other purpose."

On September 10, 1931, in answer to a request from the church authorities for the interest the defendant wrote to the treasurer of the church the following letter:

" *September* 10th, 1931.

" Mr. ARTHUR CURTHOYS, Treas.,
·" Woodside Presbyterian Church,
" Troy, N. Y.

" Dear Sir: On my return from my vacation I received your letter dated July 28th in which you state ' It has been your custom in the past to enclose a check for $562 for interest on Mrs. Proudfit's legacy and we are wondering if you overlooked it at this time.' I regret exceedingly that I am unable any longer to make the semi-annual payment of this sum. As you probably know, the Burden Iron Co. in which I hold a substantial amount of stock has ceased to pay dividends and nearly all the investments I have made during the past few years have either cut dividends or omitted them altogether. Consequently I am in no position to continue payments I have made heretofore to the Woodside Church.

" While I have used the words ' Mrs. Proudfit's legacy ' in letters in which I enclosed my check, it has been a misstatement of fact. I myself have always regarded the payment of this sum as a gift and not a legacy. It therefore becomes incumbent on me to set forth as briefly and clearly as I am able to the facts in connection with this payment.

" Under the will of my aunt, Mrs. Proudfit, which is dated July 12th, 1915, of which the subscribing witnesses were J. H. Peck, Samuel S. Williams and Wm. S. Kennedy, it is provided in the first clause thereof as follows: ' I give and bequeath to my nephew I. Townsend Burden and my niece, Evelyn B. Burden, children of my brother I. Townsend Burden or to the survivors of them, the sum of $25,000.' This is the only provision contained in the will itself dealing with this bequest. However, among Mrs. Proudfit's papers there was a letter dated May 28th, 1910, signed Margaret E. Proudfit, which states as follows: ' It is my express desire and purpose in giving to you $25,000 by a codicil to my will although I do not make it a trust and condition that you should with it

create a trust of that amount with some trust company the income of said fund to be used to pay and apply same to keeping of the building of the South Presbyterian Church of Troy, in good order and repair.' This letter referred to a prior will which bequeathed this sum of money under a codicil. Mrs. Proudfit's will, as finally probated makes an outright bequest of the entire sum of money to my sister and myself without any conditions or alternatives. The making of this new will automatically revokes any earlier will.

" In order to corroborate my opinion on this question I have submitted the facts to the firm of Peck & Behan who were attorneys in charge of the probating of Mrs. Proudfit's will and the distribution of the assets thereunder. On June 4th, 1931, I received a letter from Mr. Jos. Behan, Jr., which states in effect, ' Since receiving your letter which came while I was out of the city for a few days, I have looked at the papers in the Surrogate's Court, also the records in our office files. There is nothing in either which might support the theory that the bequest to yourself and your sister was upon any condition or trust. It appears that this was an absolute gift, also the accounting by the executors shows this legacy was paid direct to yourself and your sister and the transfer tax paid upon your shares in the estate included the tax against you on this legacy.' Under these circumstances, therefore, I feel no obligation either legal or moral to continue this payment to the Church. My only wish and hope was that I might be able to continue it as a charitable bequest but business conditions and the general depression existing throughout the country has made it impossible for me to do so.

" Yours very truly,
" I. TOWNSEND BURDEN."

After the receipt of this letter the present action was commenced. It is evident from the record in the case that the defendant did not carry out the exact request made of him and his sister in the letter from Mrs. Proudfit. Instead of putting the money in the hands of a trust company he became trustee of the money himself.

The defendant effectually confirmed a trust of personal property consisting of $25,000, in which he as author of the trust himself became the trustee. This he could legally do. (*Martin* v. *Funk*, 75 N. Y. 137; *Barry* v. *Lambert*, 98 id. 306.)

The letters written by the defendant to the church authorities followed by the payment of interest for a long number of years constituted a good and valid declaration of a trust and the defendant held the legal title to the moneys for those to whom he had given the income from it.

It is impossible for the creator of a trust, however much he may desire to do so, to express any intention to have the fund remain *in solido.*

The question, therefore, with the court is whether by the trust created the mere use was intended to be given, or whether we are permitted to say that the gift was absolute and carried the principal itself. Unless this can be answered so as to show it was the intention to give more than the mere use, the trust will fail. We are to consider what the intention was of the defendant in setting up this fund. If it is determined that the disclosed intention was to give the use merely, and that is clearly manifested and undisputed, then there can be no trust. The only rational object of giving the use merely would have been to preserve the principal for some other destination. There is no expression of disposition on the part of the defendant outside of and beyond a corporate beneficiary. He expresses no purpose for the disposition of the trust in case there ceases to be a beneficiary, he contemplated no remainder. The entire beneficial interest was given forever and to a corporation which does not die. It was for cases of such character that the rule was formed which adds the naked and barren legal title to a gift of the entire beneficial interest, because outside of that such title can go nowhere and represents nothing.

There is no clear and expressed intention to give only the use and to otherwise dispose of the remainder. The rule controlling, which regards a gift of the entire income and dividends as a gift of the principal out of which they issue, can be applied to uphold the judgment in this case. (*Locke* v. *F. L. & T. Co.,* 140 N. Y. 135, at pp. 147 and 149.)

While the transfer of the property to the trustee for the purposes of the settlement may be the surest way to create a trust, yet the same result will be accomplished if the owner declares that he himself holds the property in trust for the person designated, and this trust may be created either in writing or, if relating to personal property, by parol. The declaration need not be made to the beneficiary, nor the writing given to him; in fact, his ignorance of the trust is immaterial. (*Matter of Brown,* 252 N. Y. 375.)

The defendant herein created a trust with himself as trustee for the benefit of the plaintiff. The trust was to be a continuous one. He paid the income for many years, when he refused to pay any longer by his letter written in 1931. He, therefore, became liable in a suit for an accounting, not having provided for the disposition of the remainder in creating a trust, and the use having been set aside to a corporation and no beneficial interest having been reserved,

he became possessed of the naked legal title held for the benefit of the plaintiff.

The judgment herein should be modified as follows:

*First.* That between July 6, 1916, and October 2, 1916, the defendant I. Townsend Burden created and established a trust fund in the sum of $25,000, the net income only thereof being payable to and for the benefit of the plaintiff permanently.

*Second.* That said I. Townsend Burden is now holding as said trustee said corpus which he has stated was invested, " so as to yield for the benefit of the Church 4½% annually."

*Third.* The plaintiff is entitled to an accounting from said I. Townsend Burden for the securities and investments if made in accordance with his assertion, and if no investments were made then plaintiff is entitled to an accounting as to the sum of $25,000 and the income thereon, with interest from January 11, 1931.

*Fourth.* That on or about September 10, 1931, the defendant I. Townsend Burden claimed to be under no obligation either legally or morally to continue the payment to the church and repudiated any obligation on his part to pay the income from said fund to the church.

And it is further adjudged that the said defendant I. Townsend Burden be and hereby is directed and required to render and file herein an accounting of his proceedings as trustee to said trust within thirty days after the entry of this judgment and the service of a copy thereof with notice of entry, and that upon the judicial settlement of said account final judgment be entered herein directing and requiring the defendant I. Townsend Burden to pay the plaintiff the balance of said trust fund found due upon said accounting, and further adjudged that the complaint be and the same is hereby dismissed as to the defendant Evelyn Burden, with costs as in an action.

The matter should be remitted to Special Term for the purpose of an accounting and for final judgment and the judgment as herein modified should be affirmed.

HILL, P. J., and BLISS, J., concur; RHODES, J., concurs in the result; HEFFERNAN, J., dissents, with an opinion.

HEFFERNAN, J. (dissenting). I do not agree with the views of my associates. Plaintiff brought this action to establish and enforce a trust in the sum of $25,000, which it alleged was given to defendants, brother and sister, by their aunt, Margaret E. Proudfit, for the purpose of enabling them to create a trust in that amount for plaintiff's benefit.

On May 28, 1910, Mrs. Proudfit wrote defendants the following letter:

"My dear Nephew and Niece: It is my express desire and purpose in giving to you Twenty Five Thousand Dollars by the codicil to my will, although I do not make it a trust and condition, that you should with it create a trust of that amount with the Knickerbocker Trust Company, or if for any reason that shall be impracticable, then with some other solvent and appropriate corporation, by which such company or corporation shall take and hold the same in trust, to invest the same and keep the same invested, and to collect and receive the rents, income and profits thereof and to pay and apply the same to keeping the buildings of the ' South Presbyterian Church of Troy,' commonly known as the ' Woodside' Presbyterian Church,' and the grounds about the same and used in connection therewith, in good order and repair, so far as the money so applicable thereto will permit; but no part thereof to be applied to any alteration or enlargement thereof; payment to the persons named in my will as executors, and to the survivor of them, and after the decease of both of them, to the Treasurer of said Church, to be and to be held to be a sufficient application of such rents, income and profits to the purposes of this trust, and a receipt by them with a statement that the said moneys have been or are to be applied for such purposes shall be conclusive evidence thereof, and of a full discharge of the trustee for the moneys so paid."

Nearly three and one-half years later and on November 15, 1913, Mrs. Proudfit published her last will and testament in which she made the following bequest to defendants:

"*First.* I give and bequeath unto my nephew, I. Townsend Burden Junior and to my niece Evelyn Burden, children of my brother I. Townsend Burden, or to the survivor of them, the sum of Twenty Five Thousand Dollars."

Testatrix died on September 14, 1915. Her will was admitted to probate by the Surrogate's Court of Rensselaer county on October 14, 1915, and letters testamentary were thereupon issued to appellant and one Bullions as executors. On July 6, 1916, the bequest referred to was paid to the defendants individually.

On October 2, 1916, appellant composed and sent to the pastor and trustees of respondent the following communication: "As you probably know, my beloved Aunt, Mrs. Margaret E. Proudfit, in a letter written to me and found with her will, requested that I set aside the sum of $25,000, the income of which should be applied for the benefit of the Woodside Presbyterian Church.

"In accordance with her wishes I have invested this amount so as to yield for the benefit of the Church $4\frac{1}{2}\%$ annually, which amounts, as you will see to the sum of $1,125. I will arrange to send you this money in quarterly installments, beginning the

11th of October, 1916, which is just three months time from the day when the estate was distributed. This quarterly payment will amount to the sum of $281.25.

" My aunt, as you know, always had a deep and enduring interest in the welfare of the Church which was founded and built by her Father, and it is a great pleasure for me to be able to administer the income of this generous donation for its welfare."

On October 11, 1916, appellant addressed the following letter to respondent's trustees: " In accordance with my letter of last week to Rev. Dr. Marden and yourselves I take pleasure in enclosing herewith my check for $281.25 in payment of the 1st quarter's interest on the Trust fund authorized by Mrs. Proudfit."

This is the first of a series of similar letters received by respondent's treasurer inclosing checks bearing appellant's signature representing interest on $25,000 at four and one-half per cent per annum. The interest was paid in full until 1931.

On November 29, 1916, respondent's secretary, by letter, requested appellant to furnish him a copy of Mrs. Proudfit's letter relating to the legacy of $25,000 and made inquiry as to whether the income from the fund was to be paid for a limited time or continuously. In response thereto appellant advised the secretary as follows: " Your letter of November 29th is at hand. According to your request, I am sending herewith a copy of the letter written by my aunt Mrs. Proudfit found among her papers at the time of her death. You will see that in this letter she requests my sister and myself to set aside the sum of $25,000.00 and to pay over and apply the income from said sum towards keeping the buildings and grounds of the Woodside Church in good order and repair. In this letter she refers to a codicil to her will, in which she leaves a bequest of this sum to my sister Evelyn and myself. However, in the will itself, which was drawn on the 15th day of November, 1913, in the first paragraph thereof, she leaves the sum of $25,000.00 to myself and my sister outright, without a trust attached. Of course it would be impossible as a matter of law to enforce this trust, and the matter has been left entirely at the discretion of myself and my sister as to the method of the investment of this fund and the distribution of the income.

" My sister and I have decided to carry out my aunt's wishes as expressed in her letter. The income, therefore, from this sum will be a permanent matter, and will be sent to you quarterly, as I stated in my former letter to your Honorable Board. However, you will note that this money is to be used to maintain the grounds and church buildings in good condition, and for no other purpose.

" The next time I come to Troy I will be glad to call to see you and

go over the Church, parsonage and grounds to determine what, if anything, is needed to be done.

" Trusting that this letter contains all the information which you desire, I am."

In July, 1931, the treasurer of the church notified appellant of his omission to make the semi-annual payment. In his reply appellant stated that he was no longer able to continue payment because of financial reverses. He also asserted that no trust had been created and that the payments of interest were contributions out of his own funds. Thereupon this action was brought.

In its amended complaint respondent predicates its cause of action on the theory that defendants, having received a legacy of $25,000 from Mrs. Proudfit, and a letter giving to them her request that a certain trust be created, if they elected to do so, did so elect and, with the legacy as the corpus of the trust, created and established the trust outlined in the letter. In unmistakable language the complaint charges that the trust suggested in Mrs. Proudfit's letter is the trust which defendants created. It is of paramount importance to remember that the action is grounded solely on that theory. On the trial respondent's counsel again and again asserted that such was his contention.

The trial court gave respondent judgment against appellant for the relief prayed for but dismissed the complaint as to the defendant Evelyn Burden. From the judgment of dismissal no appeal has been taken.

The court found, in substance, that between July 6, 1916, and October 2, 1916, appellant created and established a trust fund for respondent's benefit in the sum of $25,000; that appellant is now holding such amount in trust for respondent; that respondent is entitled to an accounting by appellant for the principal and income of the trust fund since January, 1931; that appellant has repudiated the trust and has refused to continue as trustee of the fund; that respondent is entitled to the trust fund and income since January, 1931; that respondent is entitled to judgment directing and requiring appellant to pay to it the trust fund with interest. Appellant is also directed to file an account.

The language of the decision is practically identical with the allegations of the amended complaint. The theory of the decision is that Mrs. Proudfit in her will gave to both defendants a legacy of $25,000, and that the Proudfit letter accompanied the will and by its terms requested the defendants to create a trust of the amount of the legacy; that the purpose and intent of Mrs. Proudfit in giving the legacy was to enable defendants to create a trust fund in that amount for plaintiff's benefit; that the appellant as executor paid

the legacy to both defendants "individually;" that thereafter appellant, "in accordance with the request of said Margaret E. Proudfit," invested $25,000 " in trust for the benefit of the plaintiff," the income to be paid to the plaintiff for the purpose of maintaining its church buildings and property in good condition; that appellant notified respondent " that said fund had been invested for the benefit of the plaintiff, in order to carry out the wishes of said Margaret E. Proudfit;" that from October 2, 1916, to January 11, 1931, the appellant " collected and received the income from said trust fund, at the rate of four and one-half per cent per annum, and paid over to the plaintiff the whole of said income."

Thus the decision plainly holds that a trust was created by the appellant, the corpus of which was the $25,000 bequeathed and paid to both defendants.

The bequest was absolutely given by the will to both defendants, " or to the survivor of them." It was paid to both defendants on July 6, 1916, both having survived testatrix. Under the will the defendants took the legacy as tenants in common, each an equal one-half of such legacy. (*Matter of Kimberly*, 150 N. Y. 90; *Matter of Weiner*, 137 Misc. 46.)

The judgment of dismissal in favor of the defendant Evelyn Burden is *res adjudicata* that respondent has and can claim no cause of action against her growing out of or in any manner relating to the bequest in the Proudfit will to both defendants and that appellant was not authorized to create any trust or otherwise to obligate the codefendant as to her half of the legacy. The court found that Evelyn Burden did not participate in the transaction, but that she did receive her equal share of the bequest. It follows, necessarily, that if any trust was created by appellant from the proceeds of the bequest in the Proudfit will, the appellant had only $12,500 of that bequest to put in the trust. No trust was constituted of the $25,000 legacy. The only evidence in the record to sustain the finding that a trust was created " in accordance with the request of said Margaret E. Proudfit " is the letter written by testatrix to defendants on May 28, 1910. This letter antedated the will by more than three years. It referred to a gift of $25,000 " by the codicil to my will." Obviously this letter could not and did not refer to the will of November 15, 1913, under which the legacy came. No proof was offered as to the will and codicil to which the letter purported to refer. In its finding the court evidently assumed, without proof, that the letter applied to the later will. The proof does not warrant any such assumption. When testatrix wrote the letter in question it is apparent that a will and codicil were then in existence, the provisions of which are left to speculation. There

is no proof, except the bare statement, that there was any such gift in a codicil. Who can say that this reference to the codicil was not something wholly apart from the legacy in the will of 1913? There is nothing in the will of 1913 to suggest the subject of the letter beyond the fact that the amount of the legacy in the later will is the same as stated in the letter to have been in the codicil.

The letter did not require the creation of any trust, but left it entirely optional with defendants to create or not to create the trust suggested. There can be no valid trust unless it is capable of being enforced even against the wish of the trustee; a mere honorary obligation which the trustee may perform or not at his will does not create a trust. (*Holland* v. *Alcock*, 108 N. Y. 312.)

It should also be noted that the trust suggested in the letter was defined with particularity. The trustee was named. The fund was to be held and invested by the trustee. The trustee was to apply the income for the upkeep of the church buildings and grounds. No part of the income was to be devoted to alterations or enlargements. The decision under review does not declare the establishment of any such trust.

The proof does not justify the finding that testatrix's intention in giving defendants the legacy of $25,000 was to enable them to create a trust fund of that amount for plaintiff's benefit. The provision in the will regarding this legacy is clear and needs no interpretation. It unequivocally declares the intention of the testatrix to make an absolute gift, and that intention cannot be defeated by resort to extraneous evidence, parol or documentary. (*Brown* v. *Quintard*, 177 N. Y. 75.)

It is clear that no trust in accordance with the letter of Mrs. Proudfit was ever set up. The complaint alleges no other. Apparently respondent now makes the belated claim that appellant established a voluntary trust. Such a claim finds no support in the pleadings, the decision or the law. A voluntary trust is a gift and requires all the essentials of a plain gift to sustain it. The letters of appellant, which respondent stresses, do not provide for such a trust as that decreed in the judgment. The most that the letters can be claimed to prove is that appellant " invested this amount [$25,000] so as to yield for the benefit of the Church $4\frac{1}{2}\%$ annually," which he promised to send in quarterly installments. No where is there any gift or any declaration of a purpose to make a gift of $25,000, which respondent asserts to be the corpus of the trust. Here there is simply a promise of the gift of income. A voluntary trust which is incomplete, imperfect or promissory will neither be enforced nor aided.

The requisites of a valid trust of personal property are: " ' (1) A

designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee.' " (*Brown* v. *Spohr*, 180 N. Y. 201.) The act constituting the transfer must be consummated and not remain incomplete, or rest in mere intention, and this is the rule whether the gift is by delivery only, or by the creation of a trust in a third person, or in creating the donor himself a trustee. (*Martin* v. *Funk*, 75 N. Y. 134.) It is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made, or not at all. To create a trust, the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another. The settler must transfer the property to a trustee, or declare that he holds it himself in trust. In cases of voluntary settlements or gifts, the court will not impute a trust where a trust was not in fact the thing contemplated. (*Young* v. *Young*, 80 N. Y. 422, 437, 438.)

On the evidence in this case there is no fund sufficiently designated or identified to enable title thereto to pass to the trustee. Appellant in his letter of October 2, 1916, to respondent's officer said: " In accordance with her [Mrs. Proudfit's] wishes I have invested this amount [the amount of the legacy] so as to yield for the benefit of the Church $4\frac{1}{2}\%$ annually." To invest it in accordance with her wishes would be to " create a trust of that amount with the Knickerbocker Trust Company " or some other solvent corporation as trustee to do the things outlined. There is no proof of any delivery or assignment of any fund or other property to any trustee, even if we include the appellant as a trustee, except the statement about investment in the letter. There is no proof that appellant made any investment. It is quite apparent that what appellant intended was a gift of interest to respondent of four and one-half per cent on $25,000. It was simply his naked promise, without consideration, to make the gift. He kept the promise so long as financially able.

The Proudfit letter was not observed; his sister took no part; the Proudfit legacy furnished no legal consideration. The essentials to the constitution of a valid trust of personal property are absent. There was no trust but merely a promise to pay interest. To create a trust there must be more than a mere intention to give, a promise to give, or an expectation to give. Benevolence alone will not do. There must also be beneficence. No trust that is uncertain is

enforced by law; because the law would have to define it, or in other words create it, before enforcing it.

An examination of the authorities (*Matter of Brown*, 252 N. Y. 375, and *Locke* v. *F. L. & T. Co.*, 140 id. 135) upon which respondent relies discloses that the facts in those cases are so variant as to render them valueless as precedents in this cause.

The judgment should be reversed and the complaint dismissed, with costs in this court and in the court below.

Judgment modified, in accordance with opinion, and as so modified affirmed, without costs.

The court reverses and disapproves conclusions of law designated fifth and sixth, contained in the decision, and the paragraphs of the judgment numbered fifth and sixth, and the court makes the following new findings of fact and conclusions of law:

*First.* That between July 6, 1916, and October 2, 1916, the defendant I. Townsend Burden created and established a trust fund in the sum of $25,000, the net income only thereof being payable to and for the benefit of the plaintiff permanently.

*Second.* That said I. Townsend Burden is now holding as said trustee said corpus which he has stated was invested, " so as to yield for the benefit of the Church 4½% annually."

*Third.* The plaintiff is entitled to an accounting from said I. Townsend Burden for the securities and investments if made in accordance with his assertion, and if no investments were made then plaintiff is entitled to an accounting as to the sum of $25,000 and the income thereon, with interest from January 11, 1931.

*Fourth.* That on or about September 10, 1931, the defendant I. Townsend Burden claimed to be under no obligation either legally or morally to continue the payment to the church and repudiated any obligation on his part to pay the income from said fund to the church.

And it is further adjudged that the said defendant I. Townsend Burden be and hereby is directed and required to render and file herein an accounting of his proceedings as trustee to said trust within thirty days after the entry of this judgment and the service of a copy thereof with notice of entry, and that upon the judicial settlement of said account final judgment be entered herein directing and requiring the defendant I. Townsend Burden to pay the plaintiff the balance of said trust fund found due upon said accounting and further adjudged that the complaint be and the same is hereby dismissed as to the defendant Evelyn Burden.

Matter remitted to Special Term for the purpose of an accounting and for final judgment and the judgment as herein modified affirmed.